NOTICE
Decision filed 04/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250008-U

NO. 5-25-0008

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 24-CF-383 |
| | ) | |
| MARQUIS J. MARSHALL, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying defendant's motion for relief are affirmed where no condition, or combination of conditions, alleviates defendant's dangerousness.

¶ 2   Defendant, Marquis J. Marshall, appeals the trial court's December 27, 2024, order denying his pretrial release and the trial court's December 30, 2024, order denying his motion for relief. On appeal, he argues that the trial court erred in finding that no condition or combination of conditions would ensure defendant's appearance for subsequent hearings or being charged with a subsequent felony or Class A misdemeanor. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4    On December 26, 2024, defendant was charged, by information,[1] with one count of unlawful possession of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2024)), a Class 3 felony, and one count of aggravated assault in violation of section 12-2(c)(1) (*id.* § 12-2(c)(1)), a Class A misdemeanor. The charges alleged that defendant pointed a Glock 19 9-millimeter handgun at Isaac Phillips on December 25, 2024, placing Mr. Phillips in reasonable apprehension of receiving a battery. The information further alleged that defendant was previously convicted of aggravated robbery, a felony offense under the laws of Texas. The same day, the State filed a verified petition to deny defendant pretrial release.

¶ 5    The pretrial investigation report revealed that defendant was 33 years old and lived in Texas prior to his move to Illinois a month earlier. Defendant had two children who resided with their mother in Houston, Texas, that he was supporting. He was residing with friends and their 11-year-old child in Kentucky and was employed for the past three weeks at Xpress Staffing. He had no valid driver's license. The Virginia Pretrial Risk Assessment (VPRAI-R) classified defendant as a Level 2 risk out of 6 for recidivism while on pretrial release. His criminal history was limited to Texas and included an expired registration and driving with invalid license in 2023, speeding in 2022, aggravated robbery in 2015 for which defendant was sentenced to eight years' imprisonment, and unlawful carrying of a weapon and criminal mischief in 2012. The charges from 2022 and 2023 each included pretrial failure to appear warrants. The report also revealed an active and outstanding warrant issued on November 21, 2024, related to a new charge of assault causing bodily injury to a family member in Texas.

---

[1]The information was superseded by a bill of indictment on January 23, 2025.

¶ 6    A hearing on the State's petition was held on December 27, 2024. The State proceeded by proffer and advised the court of defendant's criminal history and the failure to appear warrants. As to the current Illinois charge, the State proffered that if the case proceeded to trial Mt. Vernon police officer Crawford would testify that on December 25, 2024, he responded to an Illinois State Police notification regarding a suspect vehicle stemming from a road rage incident wherein a vehicle matching the description of defendant's vehicle was involved with another vehicle on the interstate. The reporting party was Isaac Phillips who advised police that an individual bearing a strong physical resemblance to defendant—described as an African American male with dreadlocks—displayed a black handgun with a green laser in the direction of Mr. Phillips while Mr. Phillips's car was passed by the suspect vehicle.

¶ 7    The State proffered that Officer Crawford was able to locate the suspect vehicle matching the description provided by Mr. Phillips and performed a traffic stop after noting the vehicle was traveling at a high rate of speed. Officer Crawford contacted the driver who was identified as defendant. Defendant stated that a male was trying to run him off the road and denied that a gun was involved. Officers spoke with three other occupants in the vehicle, one of whom indicated there was a firearm in the rear of the vehicle. Mt. Vernon police officer Rush located a black Glock 19 9-millimeter handgun with a green laser sight, consistent with the firearm described by Mr. Phillips. Officers Rush and Crawford also noted that of the four occupants in defendant's vehicle, only defendant was an African American male with dreadlocks. When asked if there were any children in the car, the State responded that it only had the age of one occupant and that person was 40 years old.

¶ 8    The State argued that defendant had very insignificant ties to the community and only lived in Illinois for approximately 30 days. He worked in Elizabethtown, Illinois, which was not in

3

Jefferson County, Illinois. The State further argued that there was no possibility of probation for the charged offense, which had an enhanced penalty of 2 to 10 years in the Illinois Department of Corrections instead of the usual 2-to-5-year sentencing range. The State expressed concern for the wellbeing of Mr. Phillips, who indicated that he was willing to pursue charges against defendant, as well as concern for other drivers on the road.

¶ 9     Defense counsel stated that if defendant were called to testify, he would tell the court that he was 33 years old, he had two children that he supported who resided in Texas, and he had been working in Illinois for three-plus weeks. He lived in Radcliff, Kentucky, which was across the river, and was employed in Elizabethtown, Illinois. He would also testify that he was released from the Texas Department of Corrections in 2020 after serving six years and seven months for aggravated robbery. Defense counsel argued that defendant's criminal history had several traffic-related incidents, a misdemeanor, and the aggravated robbery which was almost 10 years old. Defendant was not on parole. Defense counsel argued that there was no probable cause to pull defendant over. He was a black male driving a silver vehicle and there was no primary reason to stop him. The vehicle was searched, and defendant was arrested.

¶ 10    The court asked about the report of brandishing the weapon and description. In response, defense counsel stated that defendant spoke to the police and denied the weapon was involved in the incident. He would proffer that he was the victim of road rage and not the other way around. The individual that he passed got up beside him and flipped him off and then followed him for several miles. Defendant got off the interstate, went to Love's gas station, got back on the interstate and the individual appeared again, following him and running him off the road. Defense counsel stated that it was not clear from the police report whether the police interviewed the occupants in defendant's vehicle to corroborate defendant's version of events. Counsel provided the names of

4

the occupants of the car, including their son, and said they were residing at their house in Radcliff with defendant and were lifelong friends. Defense counsel explained that defendant and the occupants of the vehicle were traveling to St. Louis to see the family on Christmas day. Counsel argued that there were ties to the community, a "pretty glaring suppression issue for the stop," and witnesses would testify that defendant would continue to reside with the family in Radcliff, Kentucky, and work in Elizabethtown, Illinois, so he could send money to his children in Texas. Defense counsel confirmed that one of the occupants advised police there was a gun in the car.

¶ 11 The State responded that Mr. Phillips stated that defendant was the driver who brandished the firearm. It noted that the firearm was described as having a green laser sight which was exactly what was found by Officer Rush when he searched the vehicle. "For Isaac Phillips to have guessed or made a wild conjecture that this existed in *** [defendant's] vehicle would be highly, highly unlikely absent firsthand knowledge which would include personally observing" the person in that car. The State argued that likelihood of success at trial was high and noted that the police report did not indicate any phone calls from defendant to report the alleged erratic driving of Mr. Phillips or the threatening, aggressive behavior of Mr. Phillips.

¶ 12 Defense counsel argued that it was Christmas day and raining. He argued that "any identification or any facts that can be taken thereof should also be taken with a grain of salt." It was also clarified that the vehicle was an SUV, so the weapon could have been placed in the rear without pulling over or stopping the car.

¶ 13 The court noted defendant's criminal history, that included two active warrants from Texas, as something for consideration as far as a person's willingness to appear in court and abide by orders. It also noted the previous aggravated robbery offense was "a pretty serious offense" and showed that defendant "has some familiarity or some history with weapons." The court noted the

5

stretch of I-57 in Jefferson County was "a very dangerous stretch just from the standpoint of accidents" and there were other people in the car, including a child. The court noted that defendant was employed, had no ties to this community at all, which raised concerns about his appearance in court and risk of flight. The court also noted that the risk of flight was enhanced by the mandatory prison sentence, if convicted, which also involved an enhanced sentence. The court acknowledged the possible issue with the search but, based on the proffer provided, found there was a high likelihood of success at trial. The court also noted that the act was "very dangerous behavior" despite no shots being fired. The court granted the State's petition to deny pretrial release after finding defendant posed a danger to Mr. Phillips and the community and there was no condition or combination of conditions that would adequately ensure that defendant would appear for court hearings or mitigate his danger to the public.

¶ 14    On December 27, 2024, the court filed an order of detention finding the proof was evident and the presumption great that defendant committed a qualifying offense, defendant posed a real and present threat to the safety of any person or persons or the community, and no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons. In support, the order found that less restrictive conditions would not assure the safety of any person or persons due to the "nature of the offense dealing with weapons, defendant's criminal history, [and] the fact that Defendant has warrants for his arrest." The reasons for concluding that defendant should be denied pretrial release were for the "protection of Isaac Phillips, nature of the offense, [and] Defendant's criminal history."

¶ 15    Defense counsel filed a motion for relief and immediate release on December 27, 2024. In support, the motion argued that the court erred in granting the "State's Petition to Revoke Pretrial Release and the State's Verified Petition to Deny Defendant Pretrial Release" because the State

failed to meet its burden of proving, by clear and convincing evidence, that no condition or combination of conditions of release would reasonably ensure defendant's appearance for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. The motion argued that the court failed to consider defendant's (1) ties to the community, (2) willingness to abide by any terms of pretrial release, (3) employment, and (4) lack of relevant criminal history.

¶ 16　The motion for relief proceeded to hearing on December 30, 2024. Defense counsel asked the court to reconsider the defendant's ties to the community, noting his residence in Radcliff, Kentucky, and employment in Elizabethtown, Illinois, which was about an hour and a half from the Jefferson County courthouse. He argued that defendant lived with two of the vehicle's occupants and was employed for about a month. He asked the court to consider other alternatives to incarceration, noting that he worked in the Second Circuit, the two individuals with whom he was residing would ensure defendant's appearance in court, and he would reside with them with an ankle monitor or whatever condition the court imposed. He further argued that defendant's criminal history had "some age to it," that defendant was incarcerated in Texas, did his time, was released, and finished parole without incident. Counsel clarified that defendant was on parole for a year and a half after he was released on May 6, 2020, without revocation. Counsel argued that defendant came to stay with his friend for employment opportunities, took advantage of that, and that continued incarceration threatened that employment. He further argued that defendant's version of the events revealed that he was the victim of the road rage incident and therefore requested reconsideration of the previous findings.

¶ 17　The State argued that there was "zero reason" to believe this was a road rage incident caused by Mr. Phillips, noting that defendant did not report the alleged incident or call the police.

Defendant denied waving the gun when he was stopped, which begs the question because he was a convicted felon and could not be in possession of a weapon. The State argued that defendant's employment was through a temporary agency. The State further argued that defendant was sentenced to eight years in 2015 for aggravated battery in Texas and had a current warrant issued on November 21, 2024, for assault causing bodily injury to family members, which was very recent, in El Paso, Texas. He also had "failure to appear" warrants in Houston related to driving with license revoked and expired registration. The State further clarified that Mr. Phillips called the police, described the defendant and the weapon, and defendant and the weapon matching the description were found in the car.

¶ 18    Defense counsel argued that the failure to appear warrants were for traffic matters and stated that defendant told him that the additional active warrant "looks like it was an issue that he was charged—there was some kind of mistake with his name," that it was "put in the system wrong" and would be "taken care of without charges." Counsel argued that there were conditions that would ensure defendant's appearance in court.

¶ 19    Additional and unidentified speakers advised the court that they were the people who lived in Kentucky and did not know about defendant's warrants. They stated that defendant was helping them because one was sick, and defendant helped get his insulin and also helped with their son who was in remission from cancer. The speaker indicated that they told the officers about the weapon because they threatened them with child endangerment. The speaker confirmed the child was in the car in the back seat where the gun was found.

¶ 20    The court stated the following regarding its considerations:

"A large portion of this has to do with your criminal history which gives me concern and the fact that you are a convicted felon allegedly in possession of a weapon a

firearm. Evidence has been presented or at least offered in proof that the firearm was described. You were described, and a gun fitting that description was found in the car that you were riding in in the presence of these folks, as well as, a child who is under a doctor's care ***. *** I mean, that's a precious child to take care of, but the child was put in danger. Waiving around a gun on the interstate is not a good idea, and Phillips may have been the person that started it all. I don't know. But Phillips is one that called it in. You all didn't call it in, so that leaves me with some concern.

The pending warrant, which may or may not be mistaken identity, I don't know, but it nevertheless is a pending warrant indicating that you are the person that is wanted out of El Paso, Texas for a serious offense gives me concern as well.

And I think the ties to the community is a pretty—making quite a stretch of it because, although, southern Illinois is more like Kentucky than the rest of Illinois, that's quite a distance off, and besides I don't think I could even—if I were to going to do it, I'm not sure I can release you to an out-of-state address under the law.

So[,] I'm [still] of the mind that there is no condition or combination of conditions that would assure this court that you could comply with the conditions of pretrial release and abide by the law.

You are charged with a serious offense which has to do with firearms, and again, it carries the mandatory prison sentence. If you are convicted, you are going to go to prison for somewhere between two and 10 years. So[,] there's that to consider.

9

I have heard really no new information other than the folks that you were with that are present in court in your support, and that speaks well of you, obviously, but I'm not convinced that you should be released on pretrial release conditions at this point."

Defendant's motion for relief was denied in a docket entry. Defendant appeals.

¶ 21                                    II. ANALYSIS

¶ 22    Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e).

¶ 23    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and

physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 24    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 25    Our standard of review of pretrial release determinations was recently clarified by the Illinois Supreme Court. See *People v. Morgan*, 2025 IL 130626, ¶¶ 43-44, 54. Therein, the court found that

> "when live witness testimony is presented at a pretrial detention hearing, a circuit
>
> court's ultimate detention decision under section 110-6.1, in addition to any
>
> underlying factual findings supporting the decision, will not be disturbed on review
>
> unless found to be contrary to the manifest weight of the evidence." *Id.* ¶ 43.

11

¶ 26    However, not all pretrial release cases include live witness testimony because the statute allows for presentation of evidence by proffer. See 725 ILCS 5/110-6.1(f)(2) (West 2024). In such instances, "when parties to a pretrial detention hearing proceed solely by proffer, the reviewing court stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Morgan*, 2025 IL 130626, ¶ 51. Therefore, where the pretrial detention hearing proceeds solely by proffer,

> "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 54.

¶ 27    The Illinois Supreme Court's clarification of the proper standard of review for pretrial release appeals is different from the twofold standard of review previously utilized by this, and other, districts. See *People v. Burke*, 2024 IL App (5th) 231167, ¶ 20; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13, *People v. Whitaker*, 2024 IL App (1st) 232009, ¶ 68. As such, the first issue that must be addressed is whether the Illinois Supreme Court's clarification of the standard of review is retroactive.

¶ 28    We find this issue governed by case law. Occasionally, when the Illinois Supreme Court changes a standard of review, it provides guidance as to how the new standard should be applied. See, *e.g.*, *People v. Coleman*, 183 Ill. 2d 366, 389 (1998) ("the standard of review announced in this opinion shall be applied to all future appeals and those that are pending at the time this decision becomes final in this court"). *Morgan* made no such statement; however, "[g]enerally, when a court files an opinion, the decision is presumed to apply both retroactively and prospectively." *Tzakis v. Maine Township*, 2020 IL 125017, ¶ 27. More importantly, "a judicial decision that establishes a new rule applies to all criminal cases pending on direct review." *People v. Smith*,

12

2015 IL 116572, ¶ 24 (citing *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *People v. Davis*, 2014 IL 115595, ¶ 36). Accordingly, we find that the decision in *Morgan* clarifying the standard of review in pretrial release decisions is retroactive only to cases pending on direct review. See *Coleman*, 183 Ill. 2d at 389; *Davis*, 2014 IL 115595, ¶ 36. As this case was pending on direct review when the *de novo* standard of review was enunciated in *Morgan*, we will apply the *de novo* standard here.

¶ 29    Defendant's notice of appeal listed four issues. The issues claimed that the State failed to meet its burden of proving by clear and convincing evidence that (1) the proof was evident or the presumption great that defendant committed the charged offense; (2) defendant posed a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions could mitigate defendant's real and present threat to the safety of any persons or the community, or defendant's willful flight. Defendant's fourth issue claimed the court erred in its determination that no conditions or combination of conditions would reasonably ensure defendant's appearance for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. Notably, only one of these issues was raised in defendant's motion for relief.

¶ 30    On appeal, defendant's appointed counsel, the Office of State Appellate Defender, filed a notice stating it would not be filing a Rule 604(h)(7) memorandum (Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024)). Accordingly, our review is limited to that stated in defendant's motion for relief. *Id.* This court will not consider issues raised in the notice of appeal that were not previously presented to the trial court. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived.").

¶ 31    Here, defendant's motion for relief solely contended the State failed to prove, by clear and convincing evidence, that no condition or combination of conditions would ensure defendant's appearance for later hearings or from being charged with a subsequent felony or Class A misdemeanor. He then claimed, in support of this proposition, that the trial court failed to consider defendant's ties to the community, his willingness to abide by pretrial conditions, his employment, and his lack of relevant criminal history.

¶ 32    We first note that the State was not required to prove, by clear and convincing evidence, that no set of conditions would ensure that defendant would not be charged with a subsequent felony or Class A misdemeanor because that is the standard for revocation of pretrial release, not denial of pretrial release. See 725 ILCS 5/110-6(a) (West 2024). The relevant standard for the case at bar required the State to prove by clear and convincing evidence that no condition or combination of conditions could mitigate "the real and present threat to the safety of any person or persons or the community" or mitigate defendant's willful flight.

¶ 33    We reviewed the proffers presented by the State and defense counsel. Defendant was charged with unlawful possession of a weapon by a felon in violation of section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2024)). Here, not only was defendant alleged to be in possession of the weapon, but defendant also allegedly pointed the weapon at the driver of another car on the interstate, in the rain, on Christmas day. While defendant claimed that Mr. Phillips was the actual road raged driver, it was undisputed that neither the defendant, nor the occupants in his vehicle, called to report Mr. Phillips's behavior to the police. Instead, it was Mr. Phillips who reported defendant's behavior and provided a description of both defendant and a green laser-sighted gun, both of which were found in defendant's car, with the gun hidden under a pillow in the back seat. While defendant claimed close ties to the community, said community

14

was over an hour and a half south of the alleged incident, and employment longevity is lacking as he only held his current job for three weeks.

¶ 34    The proffers also revealed the name of the reporting witness along with his state of residence, placing the witness's safety at risk. However, even without this information, it is indisputable that pointing a laser-sighted gun at any driver on the highway would place all other drivers on that roadway at risk. We further note that defendant denied any gun being involved in the road rage incident following the stop, despite the green laser-sighted gun described by the witness being found in defendant's vehicle.

¶ 35    Defendant's criminal history revealed a 10-year-old conviction for aggravated robbery; however, his more recent criminal history included a charge for assault with bodily injury against a family member in Texas that occurred barely one month before the alleged incident in Illinois. Defendant's history also revealed that a warrant was issued in that same assault case and two pending "failure to appear" warrants were issued in two separate driving offenses in 2023.

¶ 36    Here, given the proffers, we find that no condition, or combination of conditions, would mitigate defendant's dangerousness to Mr. Phillips or the community. This is because the proffered evidence revealed defendant's ability to obtain firearms despite his felon status and defendant's unwillingness to abide by previously issued conditions of release based on the failure to appear warrants in Texas in addition to the warrant issued in the November 2024 Texas assault case. This court finds further support that no conditions would mitigate defendant's dangerousness when it considers defendant's claim that he would abide by any conditions imposed against the obvious lack of veracity regarding the firearm after being stopped by the officers following the Illinois incident. This is because we see no possible way for Mr. Phillips to know defendant had a green laser-sighted firearm in his vehicle if it had not been brandished at Mr. Phillips while driving on

15

the interstate. Accordingly, we affirm the trial court's order granting the State's petition to detain and denying defendant's motion for relief.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated herein, we affirm the trial court's order granting the State's petition to deny release and its denial of defendant's motion for relief.


¶ 39    Affirmed.